**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
THOMAS GESUALDI, et al.,

<table>
<tr><td>Plaintiffs,</td><td>**REPORT AND**<br>**RECOMMENDATION**</td></tr>
<tr><td>- against -</td><td>CV 09-2502 (KAM) (JO)</td></tr>
</table>

MACK EXCAVATION & TRAILER
SERVICE, INC.,

                       Defendant.
--------------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

Thomas Gesualdi and Frank Finkel (the "Trustees"), as trustees of the Local 282

International Brotherhood of Teamsters Welfare, Pension, Annuity, Job Training and Vacation

Sick Leave Trust Funds (the "Funds"), commenced this action on June 11, 2009 against

defendant Mack Excavation & Trailer Service, Inc. ("Mack") seeking damages arising from

Mack's alleged failure to make timely required contributions to the Funds. Docket Entry ("DE")

1 (Complaint). Mack never responded to the Complaint, and the Trustees therefore moved for

default judgment. DE 3. By order dated October 2, 2009, the Honorable Kiyo Matsumoto,

United States District Judge, referred the matter to me for a report and recommendation on

damages and injunctive relief. I now make my report and, for the reasons set forth below,

respectfully recommend that the court enter an order awarding the Trustees judgment on their

first two causes of action in the total amount of $6,571.83 (consisting of $3,394.60 in interest,

additional damages of $4,649.04, $2,433.00 in attorneys' fees, and $350.00 in costs, minus

$4,254.81 that Mack has already paid in excess of the contributions it owed); in all other

respects, I respectfully recommend that the court deny the Trustees' requests for relief, including

requests for judgment on their remaining causes of action, and for an injunction.

I.    Background

The Funds are multi-employer benefit trusts established for the benefit of members of

Local 282 of the International Brotherhood of Teamsters (the "Union") through a collective

bargaining agreement for the period of July 1, 2002 through June 30, 2006 (the "CBA") and an

agreement and declaration of trust (the "Trust Agreement"), which is incorporated by reference

into the CBA.  Complaint ¶ 2; DE 3 (Affirmation [of the Plaintiffs' Counsel] in Support of

Default Judgment) ("Aff.") ¶¶ 8, 12 & Ex. B (copy of CBA) §§ 5, 13, 15 & Ex. C (copy of Trust

Agreement).  The CBA and the Trust Agreement require signatories to contribute to the Funds –

and to provide regular written reports upon which contribution amounts are based – according to

rate schedules set forth in the CBA.  Complaint ¶ 8; CBA §§ 5, 13, 15.  Under a provision of the

Trust Agreement, an employer who enters into the CBA remains bound to its terms regarding

payments to the Funds unless the employer provides written notice to the Trustees of an intention

not to enter a new CBA and not to contribute to the Funds after the current CBA's expiration.

Aff. ¶ 13; Trust Agreement Art. IX § 1(a).

Mack entered into the CBA, *see* CBA at 31, thus becoming subject to its terms and the

terms of the Trust Agreement, obligating it to pay fringe benefit contributions to the Funds in

specified amounts.  *Id.* §§ 5, 13, 15; Trust Agreement Art. IX 1(b).  If Mack failed to make

contributions as required under the CBA, it would be liable for remedies under § 1132(g)(2) of

the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*. ("ERISA").

The Trustees filed the instant action on June 11, 2009, alleging that Mack had failed to

make the required contributions to the funds that were due under the CBA and the Trust

Agreement for August 2008 through March 2009, even though those contributions had been

"duly demanded."  Complaint ¶¶ 9-10.  The Complaint asserts five claims for relief.  In the first

two claims, the Trustees allege that Mack's failure to make contributions and other payments

violated its contractual and statutory obligations under the CBA and ERISA, respectively.  *Id*.

¶¶ 7-15.  In the third claim, the Trustees purport to allege a claim of account stated.  *Id*. ¶¶ 16-18.

In the fourth claim, the Trustees speculate that Mack may continue to fail to pay amounts due

under the CBA and ERISA.  *Id*. ¶¶ 19-22.  And in the fifth claim, the Trustees assert that they

and their beneficiaries are irreparably harmed by Mack's failure to make payments, and that they

are therefore entitled to injunctive relief.  *Id*. ¶¶ 23-26.  On the basis of those five claims, the

Trustees demand monetary damages in the amount of $33,742.28, additional amounts that might

become due during the action, a permanent injunction enjoining Mack from further violations of

the CBA, and the reimbursement of attorneys' fees.  *Id*. at 5-6 (prayer for relief).

The Trustees served the Complaint on Mack on June 15, 2009.  DE 2; Aff. ¶ 3 & Ex. A.

Mack never responded.  Aff. ¶ 5.  On August 21, 2009, the Trustees filed a request to enter

Mack's default.  DE 3 at 1.  The Trustees appended to that request the following:  a proposed

Judgment and Permanent Injunction, *id*. at 2-3; a proposed Clerk's certificate of default, *id*. at 4;

their counsel's affirmation, *id*. at 5-13; a document styled "Statement for Judgment" that

summarized the Trustees' demands for monetary relief, *id*. at 14; and a series of seven exhibits to

the attorney's affirmation, *id*. at 15-67.[1]

---

[1]  The Trustees did not then, and have never since, filed a notice of motion specifying the precise
relief sought as required pursuant to Federal Rule of Civil Procedure 7(b)(1)(C), nor have they
ever filed a memorandum of law, in violation of this court's Local Civil Rule 7.1(a).  Given the
frequency with which the Trustees' counsel litigates similar claims in this court, I infer that
counsel is familiar with the applicable rules and that the omissions were therefore deliberate.
That is a sufficient reason for the court to deny the Trustees' motion in its entirety.  *See* Loc. Civ.
R. 7.1(a).  I do not recommend such a denial for two reasons.  First, there is no apparent

The Clerk noted Mack's default on August 24, 2009.  DE 4.  After Judge Matsumoto referred the matter to me, I directed the Trustees to make any additional submissions in support of their requests for relief no later than October 26, 2009 and to provide a copy of my order to Mack.  Order dated October 5, 2009.  On October 22, 2009, the Trustees submitted a supplemental affirmation by their counsel noting that, after the entry of default, Mack had paid them a total of $27,500.00.  DE 6 ("Supp. Aff.") ¶ 3 & Ex. A.  The Trustees also withdrew the Complaint's fourth claim – for amounts coming due during the litigation – and submitted a copy of their counsel's updated billing records.  *Id.* Ex. B.  Notwithstanding Mack's payment, the Trustees continue to seek interest on the late-paid contributions, liquidated damages, attorneys' fees, costs, *see id*. ¶¶ 6-13, and they have not withdrawn their request for injunctive relief.

II.     Discussion

        A.     Applicable Law

              1.     Default

       When a defendant defaults, the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages.  Fed. R. Civ. P. 8(b)(6); *see Finkel v. Romanowicz*, 577 F.3d 79, 83 n.6 (2d Cir. 2009) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).  The fact that a complaint stands unanswered does not, however, suffice to establish liability on its claims:  a default does not

_____

prejudice to Mack, because the Trustees have articulated the reasons for the relief they seek, albeit in the improper form of attorney affirmations.  Second, denying the motion would visit on the workers whom ERISA protects the consequences of their counsel's errors, which can better be addressed through a reduced fee award.  However, I caution both the Trustees and their counsel that similar violations of court rules in future cases will result in a recommendation that the court deny relief.

4

establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action. *See, e.g.*, *id*. at 84; *Directv, Inc. v. Neznak*, 371 F. Supp. 2d 130, 132-33 (D. Conn. 2005) (denying default judgment on several claims based only on conclusory allegations which lacked a sufficient factual basis for a finding of liability); *see also Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 69 (2d Cir. 1971) (default-based liability is established by "well-pleaded allegations in a complaint"), *rev'd on other grounds*, 409 U.S. 363 (1973); *Greyhound Exhibitgroup*, 973 F.2d at 159 (complaint's assertion of proximate cause necessary for finding of liability must be "properly alleged"); *Levesque v. Kelly Commc'ns, Inc.*, 1993 WL 22113, at *5 (S.D.N.Y. Jan. 25, 1993) ("the Court must be satisfied initially that the allegations of the complaint are 'well-pleaded'") (citing *Trans World Airlines*, 449 F.2d at 63).

If the defaulted complaint suffices to establish liability, the court must conduct an inquiry sufficient to establish damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (quoting *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Detailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing. *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991); *Credit Lyonnais*, 183 F.3d at 155. The plaintiffs have submitted the following evidence, in addition to affirmations from their counsel: copies of the relevant provisions of the CBA and of the Trust Agreement; the October 29, 2003 amendment to the Trust Agreement; copies of the remittance reports submitted by Mack showing the hours

worked by a Union employee for the months of August 2008 through March 2009; and copies of two checks Mack remitted to the Funds after the Clerk's entry of default. The plaintiffs have had ample opportunity to put additional information before me but have chosen not to do so. Upon this record, I have declined to convene an evidentiary hearing and make the instant report and recommendations on the basis of the submitted documents. *Action S.A.*, 951 F.2d at 508; *Transatl. Marine Claims Agency*, 109 F.3d at 111.

      2.    <u>ERISA</u>

      ERISA is a comprehensive legislative scheme governing the administration of employee benefit funds for the purpose of protecting employees. *HMI Mech. Sys., Inc. v. McGowan*, 266 F.3d 142, 148 (2d Cir. 2001) (citing *Burgio and Campofelice, Inc. v. New York State Dep't of Labor*, 107 F.3d 1000, 1007-08 (2d Cir. 1997)). Under ERISA, employers need not provide any particular benefits; however, once an employer elects to provide benefits, the statute governs the terms of administration of the benefits. *Burgio*, 107 F.3d at 1008. Employers obligated to make contributions within the meaning of the statute must do so in accordance with the relevant multi-employer plan or collective bargaining agreement. 29 U.S.C. § 1145; *Cement and Concrete Workers Dist. Council v. Lollo*, 35 F.3d 29, 36 (2d Cir. 1994) (duty to pay benefits must spring from a source other than ERISA) (citing *Mass. Laborers' Health & Welfare Fund v. Starrett Paving Corp.*, 845 F.2d 23, 25 (1st Cir. 1988)). ERISA's overarching purpose – to protect fund beneficiaries' rights – is equitable, and the court therefore enjoys considerable discretion to fashion appropriate relief where a plaintiff successfully proves a violation. *Katsaros v. Cody*, 744 F.2d 270, 281 (2d Cir. 1984); *see also* 29 U.S.C. § 1001(a) (congressional finding that

safeguards must be provided with respect to establishment, operation, and administration of employee benefit plans to protect the interests of employees and their beneficiaries).

B.    Liability

1.    The Contract and ERISA Claims

In their first two claims, the Trustees adequately allege that Mack was obligated to make certain contribution payments to the Funds pursuant to the CBA and ERISA, respectively, and that it failed to discharge those obligations. Mack's default concedes the truth of those allegations for purposes of liability. I therefore respectfully recommend that the court find Mack liable on the first two causes of action.

2.    The Account Stated Claim

I respectfully recommend that the court decline to enter judgment in favor of the Trustees on their third claim, for an account stated, and instead dismiss it. As a judge of this court recently explained,

> An account stated is an "'agreement, express or implied, ... independent of the underlying agreement, as to the amount due on past transactions.'" *Leepson v. Allan Riley Co., Inc.*, 2006 WL 2135806, at *4 (S.D.N.Y. July 31, 2006) (quoting 1 N.Y. Jur. 2d Accounts & Accounting § 10 (2006)). Such a claim may exist "[e]ven though there may be no express promise to pay, yet from the very fact of stating an account, a promise arises by operation of law as obligatory as if expressed in writing." *Id.* (internal quotation and citation omitted). A plaintiff alleging a claim of account stated must demonstrate that "(1) an account was presented, (2) the account was accepted as correct, and (3) the debtor promised to pay the amount stated." *Nanjing Textiles IMP/EXP Corp., Ltd. v. NCC Sportswear Corp.*, 2006 WL 2337186, at * 12 (S.D.N.Y. Aug.11, 2006). "Acceptance as correct and a promise to pay the amount stated is implied where a defendant receives and retains invoices without objection in a reasonable period of time." *Leepson*, 2006 WL 2135806, at *4 (citing *Ruskin, Moscou, Evans & Faltischek, P.C. v. FGH Realty Credit Corp.*, 644 N.Y.S.2d 206, 207 (N.Y. App. Div. 1996)). "Where, however, plaintiff fails to prove that such invoices were properly addressed and mailed, and there is no evidence of a regular office

7

mailing procedure, there should be no presumption of receipt[.]" *Melito &
Adolfsen, P.C. v. Travelers Indem. Co.*, 872 N.Y.S.2d 692, 692 (N.Y. Sup. Ct.
July 24, 2008) (citing *Morrison Cohen Singer & Weinstein, LLP v. Brophy*, 798
N.Y.S.2d 379, 380-81 (N.Y. App. Div. 2005)).

*Afroze Textile Indus. (Private) Ltd. v. Ultimate Apparel, Inc.*, 2009 WL 2167839, at *6

(E.D.N.Y. July 20, 2009) (some citations omitted).  Application of these principles to the

circumstances of this case precludes a finding of liability on this cause of action.

The Complaint's account stated claim is supported for the most part by conclusory

allegations.  Although the Trustees allege specific dates on which "accounts were taken and

stated by and between" the parties and "received and accepted" by Mack, Complaint ¶ 17, it does

not sufficiently plead the existence of an agreement independent of the CBA that imposed a

payment obligation on Mack.  Specifically, it does not provide any particularized factual

allegations concerning any mailing of the statements by the Trustees or any actual promise by

Mack to make payment.  Instead, the Trustees appear to rely on the principle that the latter

elements may be inferred because Mack received and accepted the statements "without making

objection." *See id*.  Such reliance, however, would require the Trustees to plead and prove that

their statements were properly addressed and mailed – and neither their Complaint nor their

counsel's affirmation satisfies that requirement.  Accordingly, the Trustees have neither alleged

nor proved all of the essential elements of an account stated claim.[2]

_____

[2]  To be sure, the Trustees do allege that Mack received the statements. Complaint ¶ 17.
However, absent some information about actual receipt (which they have not alleged), the only
way the Trustees could reasonably allege such receipt would be to presume it based on the fact
that they properly addressed and mailed the statements.  In the absence of any allegation that they
did so, their assertion that Mack received the statements must be viewed as conclusory – and
therefore not established by Mack's default.  As a result, there is no proper basis for finding that
Mack received the statements, and therefore no basis for finding that Mack made – or broke – a
promise to pay.

### 3.    Other Claims

The Complaint's remaining claims are not actually independent causes of action, but instead requests for specific types of relief based on Mack's violations of the CBA and ERISA. Each type or relief – damages for unpaid contributions accrued since the Complaint was filed and injunctive relief – are potentially available on the first two claims, although I note that the Trustees in any event have withdrawn their request for the former form of relief.  Aff. ¶ 22. Accordingly, I respectfully recommend that the court decline to enter judgment in the Trustees' favor on the fourth and fifth causes of action, and instead dismiss each for failure to state a claim.

### C.    Relief

#### 1.    Contributions

The Trustees acknowledge that Mack has belatedly paid all of the required contributions. Supp. Aff. ¶ 3.  Accordingly, they are not entitled to any award for unpaid contributions.

#### 2.    Interest

The Trustees are entitled to interest on the late-paid contributions.  ERISA provides that such interest should be calculated using the rate in the relevant benefit plan or, if none, the rate prescribed by 26 U.S.C. § 6621.  29 U.S.C. § 1132(g)(2).  An October 28, 2003 amendment to the Trust Agreement sets the applicable rate for the instant claims at 1.5 percent per month, or 18 percent annually, applied from the first day of the month when the contributions were due to the day on which payments were made.  Aff. ¶ 16 & Ex. D.  For each of the four months in which Mack did not make contributions payments until September 14, 2009 (namely, August through November of 2008), the Trustees have calculated interest as follows:

| Month | Amount due | Payment due date | Interest rate | Days late | Interest |
|-------|-----------|------------------|---------------|-----------|----------|
| Aug. 2008 | $5,022.83 | Sept. 10, 2008 | .05%/day | 369 | $ 926.71 |
| Sept. 2008 | $5,139.64 | Oct. 10, 2008 | .05%/day | 339 | $ 871.17 |
| Oct. 2008 | $7,008.60 | Nov. 10, 2008 | .05%/day | 308 | $1,079.32 |
| Nov. 2008 | $6,074.12 | Dec. 10, 2008 | .05%/day | 278 | $ 844.30 |
| Total interest due | | | | | $3,721.50 |

*See* Supp. Aff. ¶¶ 6-9.

The Trustees' interest calculation is flawed in two ways. First, they have accelerated the due date for each payment to the tenth day of the month after work was performed. Although the Trustees purport to rely on Mack's remittance reports, *see* Supp. Aff. ¶¶ 6-9, those reports actually demonstrate that payment for the work performed during each of the first three months was due forty-five days after the close of the month, and that payment for work in November was due on December 7, 2008. Aff. Exs. E, F. Second, calculating interest at a daily rate of 0.05 percent, rather than a monthly rate of 1.5 percent produces a higher interest award than they are owed. Correcting such errors produces the following result:

| Month | Amount due | Payment due date | Interest rate | Days late | Interest |
|-------|-----------|------------------|---------------|-----------|----------|
| Aug. 2008 | $5,022.83 | Oct. 15, 2008 | 1.5%/month | 335 | $ 829.79 |
| Sept. 2008 | $5,139.64 | Nov. 14, 2008 | 1.5%/month | 305 | $ 773.06 |
| Oct. 2008 | $7,008.60 | Dec. 15, 2008 | 1.5%/month | 274 | $ 947.03 |
| Nov. 2008 | $6,074.12 | Dec. 7, 2008 | 1.5%/month | 282 | $ 844.72 |
| Total interest due | | | | | $3,394.60 |

I therefore respectfully recommend that the court award interest in the amount of $3,394.60.

### 3. Additional Damages

ERISA also provides for an award in "an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent" of unpaid contributions. 29 U.S.C. § 1132(g)(2). The Trust Agreement does likewise. Trust Agreement § 3(d). The Trustees invoke their right to recover 20 percent of the unpaid contributions, and correctly request $1,004.57 for August 2008; $1,027.93 for September 2008; $1,401.72 for October 2008; and $1,214.82 for November 2008. *See* Aff. ¶¶ 16-20; *but see* Supp. Aff. ¶¶ 8-9 (requesting incorrectly calculated amounts of liquidated damages). Those four amounts total $4,649.04, and I respectfully recommend that the court award that amount in additional damages.

### 4. Attorneys' Fees

The Trustees' counsel seeks to charge a total of $6,937.50 in attorneys' fees for a total of 37 hours of work (including $4,289.00 for 21.40 hours of work up until the submission of the instant motion, and an additional $2,648.50 for 15.60 hours of work between then and the submission of their counsel's supplemental affirmation four months later). *See* Aff. Ex. G at 9; Supp. Aff. Ex. B at 6.[3] ERISA makes an award of reasonable attorneys' fees obligatory, not discretionary. *See* 29 U.S.C. § 1132(g)(2), 1145; *LaBarbera v. Clestra Hauserman, Inc.*, 369 F.3d 224, 226 (2d Cir. 2004). For the reasons set forth below, I conclude that the amounts claimed by the attorneys are unreasonable and should be reduced.

---

[3] The Trustees actually request a greater amount as reimbursement of attorneys' fees, but in doing so they improperly include litigation costs other than fees. I discuss such costs separately below.

Courts in this circuit assess fee applications using the "lodestar method," under which a reasonable hourly rate is multiplied by a reasonable number of hours expended. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997); *King v. JCS Enters., Inc.*, 325 F. Supp. 2d 162, 166 (E.D.N.Y. 2004) (citing *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004); *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).[4] District courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award. *Fox Indus., Inc. v. Gurovich*, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). I therefore proceed to examine the reasonableness of both the hourly rates and the number of hours claimed.

a.     Hourly Rates

The Trustees seek reimbursement for their counsel at the following hourly rates: $300 for partner Avram  H. Schreiber ("Schreiber"), who was admitted to practice in 1969; $225 for associate Kimberly Oberhauser ("Oberhauser"), who was admitted in 2008; and $80 for the work of paralegal assistants. Aff. ¶ 23; Supp. Aff. ¶ 10. Aside from providing the year of each attorney's admission to practice, the Trustees have provided no information about their counsel's relevant experience to justify the rates they claim.

---

[4] Although "[t]he meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness[,]" it has become so entrenched in the case law that its use is still permitted, if only as a convenient shorthand. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 & n.4 (2d Cir. 2008). I use the term here only for such ease of reference, and without the artificial limitations that the court rejected in *Arbor Hill*.

I conclude that the claimed rates are unreasonable. I acknowledge that in recent ERISA default judgment cases, the court has awarded an hourly rate of $275 to Schreiber for his work on legally substantive tasks under an *Arbor Hill* analysis, based on Schreiber's experience and ERISA expertise. *See, e.g.*, *LaBarbera v. Almar Plumbing & Heating Corp.*, 2008 WL 3887601, at *6 (E.D.N.Y. Aug. 20, 2008)*; LaBarbera v. J&A Concrete Corp.*, 2008 WL 918244, at *2-3 (E.D.N.Y. Apr. 1, 2008). That hourly rate is also within the range normally paid in this district for similar work by law firm partners. *See King v. STL Consulting, LLC*, 2006 WL 3335115, at *7 (E.D.N.Y. Oct. 3, 2006) (collecting cases and finding that in this district, hourly rates range from $200 to $375 for partners). However, the courts also routinely award much lower amounts for partners who perform precisely the same kind of work, and while the Trustees are free to pay a higher rate to Schreiber if they choose, under *Arbor Hill* they are not free to force Mack to subsidize that preference. A paying client could easily obtain the services that Schreiber provided in this case at an hourly rate of no more than $200 (and indeed could just as well insist that an even more reasonably-priced associate provide the routine services needed in this case). *See Arbor Hill*, 522 F.3d at 190 ("[A] reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."). Accordingly, pursuant to *Arbor Hill*, I recommend that the court order Mack to reimburse his work at that rate.

Oberhauser had one year of experience when she worked on this case. Aff. ¶ 23; Supp. Aff. ¶ 10. Junior attorneys with that level of experience are typically compensated at hourly rates ranging from $100 to $150. *See King*, 2006 WL 3335115, at *7. The Trustees have done nothing to explain why a paying client would want to pay an inexperienced attorney more than

the minimum price for the services provided here. I therefore recommend reducing Oberhauser's hourly rate to $100.

The $80 hourly rate that the Trustees claim for the work of paralegal assistants is at the high end of the range normally approved in this district for such services. *See Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) (finding awards in this district ranged from $70 to $80 per hour for legal assistants); *see also Bd. of Trs. of the UFCW Local 174 Pension Fund v. Jerry WWHS Co.*, 2009 WL 982424, at *1, *7 (E.D.N.Y. Apr. 10, 2009) (adopting recommendation to award $80 per hour for support staff based on acceptable range of $70-80 for legal assistants); *LaBarbera v. Andrew's Trucking Corp.*, 2007 WL 4224631, at *4 (E.D.N.Y. Nov. 26, 2007) (adopting recommendation to award $70 per hour); *King*, 2006 WL 3335115, at *7 (collecting cases in this district and finding $70 per hour typical). Absent any explanation for adopting the high end of the range, I see no reason why a paying client would agree to pay it. I therefore recommend that the court award the reimbursement of paralegal work at an hourly rate of $70.

b.    Hours Expended

A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed, preferably through contemporaneous time records that describe with specificity the nature of the work done, the hours expended, and the dates. *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147-48 (2d Cir. 1983). Inadequate documentation is grounds for reduction of a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Levy v. Powell*, 2005 WL 1719972, at *6 (E.D.N.Y. Jul. 22, 2005). Having reviewed the plaintiffs' submissions in this regard I am satisfied that they sufficiently document the number of

hours their attorneys have billed.  *See* Aff. Ex. G; Supp. Aff. Ex. B.  But while the hours are adequately documented, I conclude that they are not entirely justified.

The billing records before me are excessive for the work performed – and indeed, it is apparent from a review of the billing records that much of it does not even relate to the litigation of the claims before this court.  Moreover, the proposition that the Trustees' counsel needed to invest over 15 hours of work after filing their default motion – work that produced nothing more in this litigation than an acknowledgment that Mack had paid most of what it owes, as well as a request for still more fees – is simply preposterous.   I therefore conclude that a great deal of the hours the Trustees claim was spent on work that was "excessive, redundant or otherwise unnecessary" and should therefore not be reimbursed.  *Hensley v. Eckhart*, 461 U.S. 424, 434 (1983); *Jerry WWHS,* 2009 WL 982424, at *7 (declining to award fees for hours spent on unnecessary tasks).

One acceptable method for "trimming the fat" from a fee application in such circumstances, and one that consumes fewer judicial resources than a painstaking review of each time-entry, is for the court to impose an "across-the-board percentage" cut of the total amount of time claimed.  *In re "Agent Orange" Products Liab. Litig.*, 818 F.2d 226, 237-38 (2d Cir. 1987); *Finkel v. Hall-Mark Elec. Supplies Corp.,*  2009 WL 3401747, at *4 (E.D.N.Y. Oct 21, 2009) (adopting recommendation to reduce hours by forty percent); *Almar Plumbing*, 2008 WL 3887601, at *8 (reducing hours by sixty percent); *J&A Concrete*, 2008 WL 918244, at *3 (adopting recommendation to reduce hours by ten percent).  Under the circumstances of this case, I recommend reducing the claimed hours by 40 percent.

c.    Total Reimbursement

Incorporating my recommended reductions of hourly rates and hours worked into the

Trustees' fee application produces the following results:

| Timekeeper | Hourly Rate | | Hours Worked | | Adjusted Fee |
|---|---|---|---|---|---|
| | Claimed | Adjusted | Claimed | Adjusted | |
| Schreiber | $300 | $200 | 7.60 | 4.56 | $  912.00 |
| Oberhauser | $225 | $100 | 15.90 | 9.54 | $  954.00 |
| Paralegals | $ 80 | $ 70 | 13.50 | 8.10 | $  567.00 |
| Total | | | 37.00 | 22.20 | $2,433.00 |

Accordingly, I respectfully recommend that the court award the Trustees $2,433.00 in attorneys'

fees.[5]

5.    Other Litigation Costs

At no point in any of their submissions do the Trustees specify the costs to which they

believe they are entitled.  Instead, although they never explicitly acknowledge this fact, they

simply (and improperly) request reimbursement for attorneys' fees in an amount that includes not

only the actual fees charged by their counsel, but also the costs that counsel claim to have

incurred on their behalf.  Based on my review of the billing records, it appears that they seek to

have reimbursed the following: the $350.00 filing fee, $65.00 for service of process, a "statutory

fee" of $20.00 (citing no statute that provides for such relief), and $122.99 in miscellaneous

copying and postage fees listed in the attorneys' billing records.  DE 3 at 2, 14; Aff. Ex. G at 9-

---

[5]  If the court determines that a reasonable client would be willing to pay Schreiber the hourly
rate of $275 that has previously been approved, but accepts the remainder of my
recommendations as to fees, the adjusted fee for his work would be $1,254.00 and the total
reimbursement for fees would be $2,775.00.

11; Supp. Aff. Ex. B at 6. Arguably, in light of the Trustees' failure to present any argument or explanation with respect to costs, the court should deny all such relief. However, ERISA plainly provides for the reimbursement of costs, and the docket conclusively establishes that the Trustees paid $350.00 to file their Complaint. In all other respects, however, the Trustees have failed to provide adequate proof that any other expense was necessary to this litigation and was in fact incurred. Accordingly, I respectfully recommend that the court award $350.00 in costs.

E.    Credit for Amounts Paid

Mack owed a total of $23,245.19 in contributions that it did not make until after it had defaulted in this case. However, its payments to the Trustees in September and October 2009 totaled $27,500.00, Supp. Aff. Ex. A, or $4,254.81 more than it owed in contributions. The latter amount should therefore be applied as a credit against the awards for other amounts, as follows:[6]

| | |
|---|---|
| Interest on late-paid contributions | $ 3,394.60 |
| Additional damages | $ 4,649.04 |
| Attorneys' fees | $ 2,433.00 |
| Litigation costs | $   350.00 |
| Subtotal | $10,823.64 |
| Credit for payment in September 2009 | $ 4,254.81 |
| Total | $ 6,571.83 |

Accordingly, I respectfully recommend that the court grant a total monetary award of $6,571.83.

D.    Injunctive Relief

The Trustees originally sought injunctive relief on the ground that Mack – which had at the time of the Complaint apparently failed to make required contributions – would likely continue to violate its duties under the CBA and ERISA, thereby causing them irreparable harm.

---

[6]  The Trustees contend that the court should credit Mack for only $25,923.12, or $1,576.88 less than it actually paid. Supp. Aff. ¶ 12. They do not attempt to explain why they are entitled to such a windfall, and I recommend that the court deny that aspect of their request.

*See* Complaint ¶¶ 24-26.  When they first moved for a default judgment, they asserted, through

their counsel, that injunctive relief was mandatory.  *See* Aff. ¶ 26 (citing the nonexistent "29

U.S.C. 1842.05 [sic] *et seq.*").  The Trustees went on to note that the injunction they proposed to

have the court enter "requires Defendant to do nothing more that [sic] it is obligated to do under

the applicable Collective Bargaining Agreement."  Aff. ¶ 27.  After Mack paid virtually all of the

amounts owed to the Trustees without the need for a court order, the Trustees – despite

submitting a supplemental affidavit of counsel addressing the effect of the payment on their right

to monetary relief – made no effort to address whether Mack's intervening action had done

anything to affect the need for an injunction.  For the reasons set forth below, I recommend that

the court deny the Trustees' request for injunctive relief.

The court may enter an injunction against a defaulting ERISA defendant if the plaintiffs

demonstrate that they are entitled to such relief under the statute and that they otherwise satisfy

the requirements for an injunction.  *Cement and Concrete Workers*, 2007 WL 2712314, at *6

(citing *LaBarbera v. David Liepper & Sons, Inc.*, 2006 WL 2423420, at *5 (E.D.N.Y. July 6,

2006) (citing *King v. Nelco Indus., Inc.*, 1996 WL 629564, at *1 (E.D.N.Y. Oct. 23, 1996))).  The

Trustees have plainly satisfied the first requirement; they seek to enforce provisions of the CBA

and the Trust Agreement and to prevent future violations of those collectively bargained

agreements.  *See* 29 U.S.C. § 1132(a)(3) (authorizing fiduciaries of a benefit plan to bring an

action (A) to enjoin violations of the statute or of the plan, or (B) to redress such violations or to

enforce any provision of the statute or the terms of the plan); *see also Cement and Concrete

Workers*, 2007 WL 2712314, at *6.  By virtue of its default, Mack has admitted liability and the

plaintiffs have therefore achieved actual success on the merits.  *See* 29 U.S.C. § 1132(g)(2) ("In

any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan ... (E) such other legal or equitable relief as the court deems appropriate.").

To obtain an injunction, the Trustees must also establish irreparable harm and the absence of an adequate remedy at law. *Cement and Concrete Workers*, 2007 WL 2712314, at *6 (citing *Ticor Tile Ins. Co. v. Cohen*, 173 F.3d 63, 68 (2d Cir. 1999)). To that end, the plaintiffs merely allege that Mack's failure to timely submit reports and contributions "seriously prevents the Plaintiffs-Trustees from assuring that all fund beneficiaries are receiving proper eligibility and pension credits." Aff. ¶ 27. They then argue that a permanent injunction would impose no obligations beyond those the current CBA imposes and that Congress "contemplat[ed] the serious adverse effect of violation of ERISA" in specifically providing for injunctive relief in ERISA cases. *Id.* ¶¶ 27-28. That unsupported allegation and the accompanying arguments do nothing to establish that Mack's violations of ERISA and the relevant collectively bargained agreements will continue, nor do they demonstrate that monetary damages are inadequate to deter future violations. *See, e.g.*, *J&A Concrete*, 2008 WL 918244, at *3 (adopting recommendation to deny permanent injunction in ERISA default action for failure to provide court with documentation sufficient to support claim for injunctive relief); *Andrew's Trucking*, 2007 WL 4224631, at *5 (denying permanent injunction on same grounds); *LaBarbera v. Rockwala, Inc.*, 2007 WL 3353869, at *6 (E.D.N.Y. Nov. 8, 2007) (same); *LaBarbera v. River Trucking & Rigging, Inc.*, 2007 WL 3274777, at *4 (E.D.N.Y. Nov. 5, 2007) (same); *King*, 2006 WL 3335115, at *9 (same).

Moreover, if, as the Trustees contend, the order they seek would require Mack to do no more than comply with its existing obligations under the CBA and ERISA, then the lack of an injunction cannot possibly subject them to any harm at all, much less irreparable harm. Indeed, by requesting relief that would do nothing to alter the parties' respective rights or obligations, the Trustees' application for an injunction is manifestly moot. *See DeFunis v. Odegaard,* 416 U.S. 312, 316 (1974) ("'Federal courts are without power to decide questions that cannot affect the rights of litigants before them.'") (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)). Finally, even if the Trustees might be entitled to relief in circumstances where Mack continued to violate its obligations to make contributions, the fact that Mack has in fact paid virtually everything it owes without any judicial compulsion suggests that the relief the Trustees seek is simply unnecessary. The Trustees have done nothing to address that fact. I therefore respectfully recommend that the court deny the Trustees' request for injunctive relief.[7]

III.  Recommendation

For the reasons set forth above, I respectfully recommend that the court enter an order awarding the plaintiffs judgment on their first two causes of action in the total amount of $6,571.83 (consisting of $3,394.60 in interest, additional damages of $4,649.04, $2,433.00 in attorneys' fees, and $350.00 in costs, minus the $4,254.81 that the defendant has already paid in

---

[7] In their supplemental submission, the Trustees for the first time in this case assert the right to recover "actual audit fees incurred." Supp. Aff. ¶ 5. Because they make no other argument in that regard, do not request an audit, and do not assert that there are in fact any "actual audit fees" that they have "incurred[,]" *id*., I assume that the inclusion of the assertion is simply another mistake by the Trustees' counsel, and not a serious request for relief. To the extent the Trustees do wish the court to consider such relief, I respectfully recommend that it be denied on the ground that the Trustees have neither demonstrated that they are entitled to an audit nor proven that they have incurred any audit fees.

excess of the contributions it owed). In all other respects, I respectfully recommend that the court deny the plaintiffs' requests for relief, including requests for judgment on their remaining causes of action, and for an injunction.

IV.     Objections

I direct the plaintiffs to serve a copy of this Report and Recommendation on the defendant by certified mail, and to file proof of service no later than February 19, 2010. Any objections to this Report and Recommendation must be filed no later than March 5, 2010. Failure to file objections within this period waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Beverly v. Walker*, 118 F.3d 900 (2d. Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52 (2d Cir. 1996).

**SO ORDERED.**

Dated: Brooklyn, New York
        February 12, 2010

                                        /s/ James Orenstein
                                        JAMES ORENSTEIN
                                        U.S. Magistrate Judge